# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Paul Levine, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.: 17 C 2537 |
| | ) | |
| Creditors' Protection Service, Inc., | ) | |
| | ) | |
| *Defendant.* | ) | Judge Frederick J. Kapala |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Paul Levine, brings multiple claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., against defendant, Creditors' Protection Service, Inc. ("CPS"). The gravamen of Levine's action stems from an unpaid balance on a medical bill owed by Levine to Rockford Orthopedic Associates ("OrthoIllinois"), which retained CPS to collect Levine's debt. Levine brings this action claiming that CPS violated the FDCPA by representing false amounts on his balance and other misleading information to a national credit reporting agency, TransUnion. Both parties have moved for summary judgment. For the reasons stated in this opinion, the motions for summary judgment are granted in part and denied in part.

### I. BACKGROUND

The facts are taken from the pleadings, the parties' statements of undisputed facts,[1] the

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue" for trial. Ammons v. Aramark Uniform Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. See Schrott v. Bristol-Myers Squibb Co., 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court admitting the uncontroverted statement as true. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th

parties' responses thereto, and the evidence submitted in support. All the facts detailed are undisputed unless otherwise stated.

Sometime in 2014, Levine's daughter visited OrthoIllinois for treatment of a broken arm. Levine's spouse signed a form entitled "Legal Assignment of Benefits and Release of Medical and Plan Documents" (the "debt agreement"). The pertinent section of the debt agreement reads:

**PATIENT PRE-CERTIFICATION RESPONSIBILITY**

. . . .

I understand that I am financially responsible for charges not covered by this authorization. Should the account be referred to a collection agency for collections, the undersigned also shall pay reasonable collection expenses.

On December 19, 2014, Levine made a $100 payment to OrthoIllinois. Levine believed that this payment resolved the balance. In fact, approximately $430 still remained. Accordingly, on December 30, 2014, OrthoIllinois retained CPS, a debt collection company, and assigned Levine's debt to CPS for collection.[2] At that time, CPS applied a 25% flat collection fee in the amount of $108 to the balance, raising the total account balance to $538.[3] OrthoIllinois did not sell the rights

---

Cir. 2006). The court notes that CPS failed to comply with Local Rule 56.1(b)(3). Accordingly, the court deems Levine's Statement of Material Facts admitted by CPS, except to the extent that the record clearly reflects a genuine dispute of Levine's statement of facts.

[2]CPS claims that on December 30 its computer system sent Levine a "validation letter" to inform Levine that CPS was collecting the debt and directed Levine to make payments directly to it and not OrthoIllinois. On February 4, 2015, CPS claims its computer system sent a "reminder validation letter" noting the same. Levine claims that he does not remember seeing either letter but does not dispute that CPS sent them. Notably, because CPS does not keep copies of sent validation or reminder validation letters in their records, CPS was unable to produce in discovery the letters purportedly sent to Levine.

[3]Levine explains in his Statement of Material Facts that the total alleged balance was actually $538.43, but the total that appeared on Levine's credit report was rounded down to $538. SMF ¶ 20 n.1. The record also reflects various slight calculation differences. For example, the collection fee is at certain points in the record referenced as $109, $107.69, and $108. Further, the principal on Levine's balance is at points referenced as $430.74 rather than $430. For purposes of clarity and consistency, the court will proceed with the values reflected on Levine's credit report: $108 for the collection fee and $430 for the principal balance, for a total of $538.

2

to Levine's debt to CPS at this or any time; at all times relevant to this litigation, CPS pursued collection of Levine's debt on behalf of its client, OrthoIllinois.

On February 20, 2015, an employee of CPS, Shannon Box, telephoned Levine to inform him of the existence of the collection balance. Levine responded by noting that he did not think anything was owed on the balance because it had already been paid. Box noted in Levine's file that the balance was "possibly paid." Despite Levine's stated belief that the balance was paid, on that same day Levine made a $250 payment on the debt directly to OrthoIllinois. The record is silent as to why Levine made this payment despite his belief that he did not owe anything further to OrthoIllinois.

On March 2, 2015, CPS contacted TransUnion to report Levine's debt. CPS informed TransUnion that Levine's account balance was $538, which did not take into account the $250 payment. Further, CPS did not inform TransUnion of Levine's belief that the balance had been paid. CPS continued to report the debt to TransUnion as late as at least November 1, 2016, with an undisputed balance of $538.

On April 1, 2016, Box again telephoned Levine to follow-up on the balance. Levine informed Box that he and his spouse had "taken care of" the debt. Box noted in Levine's file that Levine "claimed that his spouse had taken care of this Account."

OrthoIllinois did not inform CPS of Levine's February 20 payment of $250 until November 15, 2016. CPS claims that it was at this time that it first learned of the $250 payment. Levine disputes this, asserting that it had informed CPS of this payment on several occasions, specifically pointing to at least two occasions—the February 20, 2015 and April 1, 2016 telephone calls with Box. After communicating with OrthoIllinois about the $250 payment, on December 1, 2016, CPS

ceased all collection efforts, closed Levine's account, and reported the payment and closure to TransUnion.[4]

Levine filed a complaint against CPS under the FDCPA. Specifically, Levine claims that CPS violated five separate subsections of the FDCPA: (1) § 1692e(2)(A) (Count I); (2) § 1692e(2)(B) (Count II); (3) § 1692e(8) (Count III); (4) § 1692e(10) (Count IV); and (5) § 1692f(1) (Count V). Both parties moved for summary judgment on all counts.

## II. ANALYSIS

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pugh v. City of Attica, Ind., 259 F.3d 619, 625 (7th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering cross-motions for summary judgment, the court considers the facts in the light most favorable to the non-moving party with respect to each motion. See First State Bank of Monticello v. Ohio Cas. Ins. Co., 555 F.3d 564, 567 (7th Cir. 2009) ("[B]ecause the district court had cross-motions for summary judgment before it, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.").

---

[4] While not material to this opinion, the court notes in passing that CPS appears to have closed Levine's account with OrthoIllinois without having collected the remaining balance that OrthoIllinois retained CPS to collect. Andrea Quist, a general manager of CPS, stated in her affidavit that upon learning of Levine's $250 payment, CPS closed Levine's account. Aff. of Andrea Quist in Supp. of Def.'s Mot. for Summ. J. ¶¶ 15, 24. The record is silent as to why CPS would have closed the account, considering that the $250 payment would not have resolved the $430 unpaid balance or the $538 balance that included the collection fee; in fact, the record reflects that OrthoIllinois did not consent to waiving the collection fee. Id. ¶¶ 21-22.

A plaintiff seeking relief under the FDCPA must show that (1) he is a consumer within the meaning given in the statute; (2) the debt arises out of a transaction entered primarily for personal, family, or household purposes; (3) the defendant is a "debt collector"; and (4) the defendant violated, by act or omission, one of the enumerated provisions of the FDCPA. Paz v. Portfolio Recovery Assocs., LLC, No. 15 C 5073, 2016 WL 6833932, at *3 (N.D. Ill. Nov. 21, 2016).[5] The parties do not dispute the first of these three prongs; instead, the parties both move for summary judgment based on arguments focusing solely on the fourth prong—that is, whether CPS violated various provisions of §§ 1692e and 1692f. "Under the FDCPA, no longer may debt collectors: (1) make false or misleading representations; (2) attempt to collect an amount (including interest) not authorized by the agreement; or (3) engage in unfair practices when attempting to collect a debt." Bentrud v. Bowman, Heintz, Boscia & Vician, P.C., 794 F.3d 871, 874 (7th Cir. 2015) (citing 15 U.S.C. §§ 1692e, 1692f).

### A. § 1692e(8) (Count III)

Section § 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the <u>failure to communicate that a disputed debt is disputed</u>." 15 U.S.C. § 1692e(8) (emphasis added). The Seventh Circuit has held that § 1692e(8) simply requires a plaintiff to "make clear that he or she disputes the debt." Evans v. Portfolio Recovery Assocs., LLC, 889 F.3d 337, 347

---

[5] Further, a statement is only "false, deceptive, or misleading" under § 1692e(8) if it is material. Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018). CPS makes no argument concerning materiality. Even if it did, it would be futile to do so. See Evans, 889 F.3d at 349 ("Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score."). The "materiality" requirement is discussed in greater detail in this opinion's section on Levine's claim under § 1692e(2)(A).

5

(7th Cir. 2018). This is a low burden for plaintiffs; the obligation merely requires the consumer to "call into question" the debt owed. Id. at 346. As long as the debt collector reasonably should know that a consumer disagrees with a debt, the debt collector is obligated to inform a credit reporting agency of the existence of that disagreement before reporting the debt. The FDCPA does not require the consumer to use any particular language or even memorialize their dispute in writing. Evans, 889 F.3d at 347 & n.6 (first citing Sayles v. Advanced Recovery Sys., Inc., 865 F.3d 246, 250 (5th Cir. 2017); and then citing Brady v. Credit Recovery Co., Inc., 160 F.3d 64, 67 (1st Cir. 1998)); see also Camacho v. Bridgeport Fin. Inc., 430 F.3d 1078, 1081 (9th Cir. 2005) (finding that "an oral dispute triggers multiple statutory protections," including § 1692e(8)); Bowse v. Portfolio Recovery Assocs., LLC, 218 F. Supp. 3d 745, 751 (N.D. Ill. 2016) ("[T]he FDCPA does not require the use of particular words to dispute a debt.").

On February 20, 2015, when Box telephoned Levine to explain the collection balance, Levine informed her that he believed he had already paid the full balance of the debt. Statement of Material Facts ("SMF") ¶ 14. Box noted in her account notes that the debt was "possibly paid." Id. ¶ 15. Further, in a April 1, 2016 telephone call with the same CPS employee, Levine again told Box that he believed he owed no remaining balance. Id. ¶ 17. Box recorded this in her account notes as well. Id. ¶ 18.

Clearly, Levine's statements to CPS's employee should have alerted CPS to the existence of a dispute. Courts in this circuit have uniformly found that the words "the amount reported is not accurate" sufficiently "call into question" the debt for purposes of § 1692e(8), Evans, 889 F.3d at 346 (listing district court cases), and Levine stating his belief that he no longer owed anything on his account similarly calls into question the debt. Courts in other circuits have found similar words of

6

disagreement to satisfy the low threshold for "disputing" a debt. See, e.g., Moreno v. Perfection Collection, LLC, No. CV H-18-2757, 2018 WL 6334837, at *1-2 (S.D. Tex. Dec. 5, 2018) (consumer's informing a debt collector that he was not the same "Moreno" identified in the debt contract satisfied § 1692e(8)); Irvine v. I.C. Sys., Inc., 176 F. Supp. 3d 1054, 1061 (D. Colo. 2016) (granting summary judgment to consumer for § 1692e(8) claim when consumer told debt collector "Well I don't believe it's that. I don't owe that balance. I don't owe that much," "I disagree with that balance it's just too much," and "I don't understand. I disagree with the balance period"); Palmer v. I.C. Sys., Inc., No. C-04-03237 RMW, 2005 WL 3001877, at *9 (N.D. Cal. Nov. 8, 2005) (granting summary judgment for consumer when plaintiff told debt collector "I don't think I owe these additional charges" and "I don't think I should have to pay these additional charges"); see also Dixon v. RJM Acquisitions, LLC, 640 F. App'x. 793, 795 (10th Cir. 2016) (finding genuine issue of fact when consumer stated "I don't agree that I owe that much, that's too much," "I don't owe that much," and "I feel that all I owe is $20" for purposes of § 1692e(8)).

CPS argues that because courts have held that "there is no affirmative obligation under the FDCPA for a debt collector, after becoming aware of a dispute, to update the information," it did not violate the FDCPA by not informing TransUnion of Levine's dispute. Gordon v. Syndicated Office Sys., LLC, No. 16 C 4440, 2017 WL 1134489, at *2 (N.D. Ill. Mar. 27, 2017) (quoting Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008)). But Gordon and Wilhelm only stand for the proposition that a debt collector has no affirmative obligation to inform a credit reporting agency of the existence of a dispute of which it only became reasonably aware after the debt collector's initial reporting of the debt to the credit reporting agency. Quoting the relevant section of the Federal Trade Commission's December 1988 Staff Commentary on the Fair Debt Collection Practices Act, the

7

Eighth Circuit explained that where a debt collector already knows or should already know of the existence of a dispute, and if the debt collector elects to report the debt to a credit reporting agency, the debt collector "must report it as disputed." Wilhelm, 519 F.3d at 418 (citing FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988)). Thus, the district court in Gordon found that where "the dispute occurs after the debt collector reports the debt and the debt collector has not reported the debt since the dispute," the debt collector is not obligated under § 1692e(8) to update the information already provided to the credit reporting agency to include the existence of the dispute. 2017 WL 1134489, at *3.

The factual posture in Gordon is inapposite to the facts here. It is undisputed that on February 20, 2015, Levine informed CPS over the phone that he disputed the debt. SMF ¶ 14. After Levine had informed CPS of the dispute, on March 2, 2015, CPS reported the debt to TransUnion without mentioning the existence of a dispute. Id. ¶ 16. CPS did not inform TransUnion of the dispute until December 1, 2016. Id. ¶¶ 19, 23. The "affirmative duty" limitation explained in Gordon and Wilhelm is inapplicable here.

CPS does not dispute that the February 20, 2015 call took place or that plaintiff disputed the debt. Rather, CPS only disputes that it had any knowledge that Levine made its payment to OrthoIllinois on the same day. Defendant's Statement of Material Facts Pursuant to Fed. R. Civ. Proc. 56(c) in Supp. of Def.'s Cross Mot. for Summ. J. ("AMF") ¶¶ 9, 12. This is not relevant to whether CPS knew or should have known that Levine disputed the debt balance. Nor is it relevant that Levine may not have had a reasonable basis for believing the debt had been paid off. "Section 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." Evans, 889 F.3d at 347. Defendant

8

provides the court with no argument that Levine's statements to Box on February 20, 2015 did not put CPS on reasonable notice that Levine was disputing the debt. As there is no factual dispute that Levine disputed the debt before CPS reported Levine's debt as undisputed to TransUnion, CPS violated § 1692e(8) as a matter of law.[6] Accordingly, summary judgment in favor of Levine is appropriate on this count.

### B. §§ 1692e(2)(A), 1692e(2)(B), 1692e(10) (Counts I, II, and IV)

A single violation of any subsection of § 1692e is sufficient to establish civil liability under the FDCPA. Posso v. Asta Funding Inc., No. 07 C 4024, 2007 WL 3374400, at *2 (N.D. Ill. Nov. 9, 2007); Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1125 (9th Cir. 2014); Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1275 (11th Cir. 2011); Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 133 (2d Cir. 2010); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1238 (5th Cir. 1997); see also Chauncey v. JDR Recovery Corp., 118 F.3d 516 (7th Cir. 1997) (affirming a district court's finding that it was "unnecessary to rule on plaintiff's second claim because a single violation of the FDCPA is sufficient to entitle a plaintiff to an award of statutory damages"). As the court has determined that summary judgment is appropriate as to Levine's claim under Count III, the court is not obligated to determine whether CPS violated the remaining subsections of § 1692e.

However, to the extent it may aid the parties in their briefings or settlement negotiations concerning damages, the court will address the parties' arguments concerning § 1692e(2)(A), the

---

[6]Throughout CPS's Response to Levine's Motion for Summary Judgment and Cross-Motion for Summary Judgment, CPS maintains that § 1692e has been repealed by implication, citing Townsend v. Quantum3 Group, LLC, 535 B.R. 415 (M.D. Fla. 2015). Aside from this case not being binding on this court, numerous courts have found that the decision in Townsend was with regard to a discrete issue that arguably created a conflict between the FDCPA and U.S. Bankruptcy law, which has no bearing on the instant case. See, e.g., Cook v. Green Tree Servicing, LLC, 154 F. Supp. 3d 742, 750 (S.D. Ill. 2016).

only one of these three other subsections on which the parties provide focused argument. As to Counts II and IV, the court declines to address them.

Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Levine argues that because he made his February 20, 2015 payment of $250, CPS should have accounted for this $250 in its reporting of Levine's account to TransUnion. CPS argues that it could not have known that Levine made the $250 payment because Levine paid OrthoIllinois the $250 directly; Levine never informed CPS that it made this payment; and OrthoIllinois did not inform CPS of the $250 payment until November 15, 2016, upon which CPS ceased all collection efforts, closed the account, and reported the payment and closure to the credit reporting agency. AMF ¶¶ 13-14.

The fact that CPS was not aware of Levine's February 20 payment of $250 to OrthoIllinois is not material. The Seventh Circuit has described § 1692e as a "strict liability" statute: "Debt collectors may not make false claims, period." Bass v. I.C. Sys., Inc., 316 F. Supp. 3d 1047, 1051 (N.D. Ill. 2018) (citing Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004)) (noting that the Seventh Circuit, unlike the Eleventh Circuit, has no knowledge requirement for claims made under § 1692e(2)(A)). "The FDCPA mitigates this arguably harsh rule through the bona fide error defense. Id. at 1051 n.2. To qualify for the bona fide error defense, a defendant must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error. Id. at 1055 (citing Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 537 (7th Cir. 2005)). CPS does not raise this defense nor does it present evidence which would make the defense available to it.

However, labeling § 1692e as a "strict liability" statute partially misses the mark. A debt collector may only be found strictly liable under § 1692e(2)(A) if a misleading representation meets the element of "materiality"—that is, a statement that would confuse or mislead an unsophisticated but reasonable consumer. Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009). An "unsophisticated consumer" is assumed to have "rudimentary knowledge about the financial world," and "is capable of making basic logical deductions and inferences." Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018); see also Gruber v. Creditors' Prot. Serv., Inc., 742 F.3d 271, 273 (7th Cir. 2014) ("Although the hypothetical unsophisticated consumer is not as learned in commercial matters as are federal judges, he is not completely ignorant either.").

While at first blush there appears to be an incongruity concerning whether a representation of the amount of a debt to a credit reporting agency can be a material representation that could confuse or mislead an unsophisticated consumer, the Seventh Circuit has found in no uncertain terms with respect to claims made under § 1692e(8) that when a debt collector makes a false representation of the amount of a debt to a credit reporting agency rather than a consumer, the "materiality" element is always met because "the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." Evans, 889 F.3d at 349. Quoting Gomez v. Portfolio Recovery Associates, LLC, the Seventh Circuit noted that "[w]hether or not a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt. Such a false and misleading statment [sic] would likely influence a consumer's decision to pay a debt . . . [and] could have had far reaching consequences for [the plaintiff] in her daily life." No. 15-cv-4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016).

11

The court finds this reasoning applies with equal force to claims made under § 1692e(2)(A). See Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) ("The act of a debt collector reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be 'in connection with' the collection of a debt." (citing 15 U.S.C. § 1692e)); see also Kaup v. Progressive Mgmt. Sys., No. EDCV 16-305 DSF (DTBx), 2016 WL 9150568, at *2-3 (C.D. Cal. Aug. 9, 2016) (finding that plaintiff stated a claim under § 1692e(2)(A) by alleging that a debt collector inaccurately reported a debt to credit reporting agencies); Smith v. RJM Acquisitions, LLC, No. 14-CV-186-JTC, 2014 WL 3107291, at *3 (W.D.N.Y. July 7, 2014) (same); Smith v. Nat'l Credit Sys., Inc., No. 1:13-CV-4219-WSD, 2014 WL 2003025, at *6 (N.D. Ga. May 15, 2014) (same). Thus, CPS violated § 1692e(2)(A) by falsely representing Levine's balance to TransUnion.[7]

Though not necessary for the disposition of these motions, and while statutory damages are limited to $1,000 for the proceeding rather than per violation, Slick v. Portfolio Recovery Assocs., LLC, No. 12 C 2562, 2014 WL 4100416, at *8 (N.D. Ill. Aug. 20, 2014) (citing 15 U.S.C. § 1692k(a)(2)(A)), the parties are directed to consider this analysis in any subsequent briefing on damages or pursuant to settlement negotiations. The court grants Levine's motion for summary judgment as to Count I.

### C. § 1692f(1) (Count V)

---

[7]CPS argues that 68 Ill. Adm. Code 1210.180(a)(2) somehow excuses its compliance with § 1692e. While CPS provides no clear argument as to why this is the case, the court agrees with Levine that this section of the Illinois Administrative Code is irrelevant, as it deals simply with the procedure for a debt collector to communicate with creditors regarding payments made by consumers.

Section 1692f(1) prohibits a debt collector from collecting or attempting to collect a debt, including additional amounts such as collection fees or interest fees, unless such amount is (1) expressly authorized by the agreement creating the debt or (2) permitted by law. 15 U.S.C. § 1692f(1); see also FTC Official Staff Commentary on FDCPA, 53 Fed. Reg. at 500107-08 (noting that additional amounts are permitted only if "(a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (b) the contract is silent but the charge is otherwise expressly permitted by state law"). The issue here is whether the 25% flat collection fee was either expressly authorized by the debt agreement or permitted by law. "Whether a debt-collection practice is unfair is a question of law under § 1692f." Bentrud, 794 F.3d at 874 n.2.

CPS first argues that the debt agreement expressly authorized the 25% flat collection fee. CPS points to language in the debt agreement that states: "I understand that I am financially responsible for charges not covered by this authorization. Should the account be referred to a collection agency for collections, the undersigned also shall pay reasonable collection expenses." SMF ¶ 8 & Ex. B (emphasis added).

A plain reading of this language would appear to resolve the matter: OrthoIllinois assigned Levine's debt to CPS for collection; CPS then charged OrthoIllinois a 25% collection fee; and finally, pursuant to the debt agreement between OrthoIllinois and Levine that made Levine responsible for "reasonable collection expenses," OrthoIllinois asked CPS to include that collection fee in the account balance when it sought to collect the debt from Levine.

Levine argues that because OrthoIllinois did not themselves attempt to collect from Levine or incur any costs in doing so that the collection fee that CPS charged OrthoIllinois cannot constitute

13

a collection expense. Even a plain reading of the debt agreement appears to defeat Levine's contention, given the absence of the qualification Levine only now attempts to insert into the contract. But the court finds other flaws in Levine's interpretation of the debt agreement.

In Bernal v. NRA Grp., LLC, No. 16 C 1904, 2017 WL 4948544 (N.D. Ill. Nov. 1, 2017) (Feinerman, J.), a debt collector, on behalf of a creditor as in the instant case, applied a percentage-based collection fee to the account when attempting to collect the debt. Id. at *1. The language of the relevant contract required the consumer to pay "costs (including reasonable attorney's fees) incurred by the creditor in attempting to collect amounts due." Id. at *2. The consumer argued that this language authorized him to be charged only what it actually cost the debt collector to collect the amount he owed. Id. The district court disagreed with the consumer's interpretation of the contractual language and granted summary judgment in favor of the debt collector, finding that this language "unambiguously" allowed the creditor to charge the consumer the creditor's costs of collection, which included the collection cost that the debt collector charged the creditor to collect the debt. Id.

Levine does not distinguish Bernal on the ground that the contractual language in that case and that of the instant case differ—nor does the court find a basis for such a distinction.[8] Rather,

---

[8] A plain reading of the language in the debt agreement renders its legal effect no different than the language in Bernal: while the latter limits "incurred costs" to those incurred by the creditor, the former allows for the passing down of costs of collection to the consumer that were incurred by any party. Cf. Seeger v. AFNI, Inc., 548 F.3d 1107, 1113 (7th Cir. 2008) (contractual language required consumer to "pay all costs including . . . collection fees . . . [the creditor] incur[s] in enforcing this Agreement."). Further, Levine's invocation of the contractual language from Thomas v. John A. Youderian Jr., LLC, 232 F. Supp. 3d 656, 674 (D.N.J. 2017), does not warrant a different outcome. There, the language expressly conveyed that the collection fee would be a percentage-fee. Id.; cf. Richard v. Oak Tree Grp., Inc., 614 F. Supp. 2d 814, 822-23 (W.D. Mich. 2008) (finding that the debt collector's "requiring plaintiffs to pay collection costs consisting of 28% of the outstanding principal balance amounts to charging plaintiffs liquidated damages" was not permissible because the contractual language never mentioned a collection fee that was percentage-based). Levine points to no binding authority that requires a creditor's debt agreement with a consumer to specify that such a collection fee must explicitly state that the fee is percentage-based, and the court is not persuaded that it must. See Bernal, 2017 WL

14

Levine simply contends that CPS has not produced evidence to show that OrthoIllinois incurred or would have incurred a cost for collection. This argument is unavailing as a matter of law and fact.

As a legal matter, Levine cites to Seeger v. AFNI, Inc., 548 F.3d 1107 (7th Cir. 2008), for the proposition that a debt collector may not assess a percentage-collection fee when those collection expenses are not actually attributable to its collection efforts.[9] But in Seeger, the court found that the collection expenses assessed in that case were not actually attributable to the debt collector's collection efforts precisely because the debt collector did not attempt to collect the debt from the consumer on the creditor's behalf, having sold the account to the debt collector. Id. at 1113. The problem for the Seventh Circuit in determining whether the collection expenses were actually attributable to its collection efforts was not a lack of evidence that the creditor did not incur an expense. Rather, the problem was that the creditor never attempted to collect the expense at all, having sold the debt to the debt collector before the debt collector ever charged the creditor a collection fee. In other words, Seeger did not "speak to the situation where the creditor actually uses a debt collector to collect the debt and then tries to pass along the debt collector's fee to the debtor." Bernal, 2017 WL 4948544, at *3. This distinguishes Seeger from the instant case, where it is undisputed that OrthoIllinois never sold Levin's account to CPS, and thus, CPS's attempt to collect

---

4948544, at *2 (language omitting reference to percentage-based aspect of collection fee found to be permissible under the FDCPA).

[9]Levine also cites to Kaymark v. Bank of Am., N.A., 783 F.3d 168, 176 (3d Cir. 2015), and Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000) (per curiam). But aside from these cases not being binding on this court, they are distinguishable. In Kaymark, the debt collector ran afoul of the FDCPA because it assessed collection costs based on a dubious estimation of what the future costs might be—a problem not present here. See Bernal, 2017 WL 4948544, at *4. And Bernal explained its disagreement with the "demonstrably incorrect premise" in Kojetin "that the costs of collection for which the debtor could be held responsible were only the out-of-pocket costs incurred by the party doing the collecting—not the creditor's costs of collection, which would include the fee payable to the debt collector." Id. (quoting Kojetin, 623 F. Supp. 2d at 118 n.7). The court agrees with the thorough analysis laid out by the district court in Bernal and finds these cases to be distinguishable.

Levin's debt was on OrthoIllinois' behalf. AMF ¶ 3.

As a factual matter, Levine himself submitted evidence that CPS charged OrthoIllinois a 25% collection fee and that OrthoIllinois factored this percentage-collection fee into the "Patient Transaction Report" on Levine's account; CPS does not dispute this fact. SMF ¶12. Further, it is undisputed that CPS agreed with OrthoIllinois to charge a flat 25% reasonable collection fee for all debts assigned from OrthoIllinois. AMF ¶ 5. Thus, Levine's contention that CPS has not adduced evidence that OrthoIllinois incurred this expense is belied by the facts.

Levine's claim that "collection costs" could only mean costs that OrthoIllinois incurred by actually attempting to collect Levine's debt is not persuasive. If the court were to accept this contention, it would defeat the purpose of a creditor using a debt collector to collect debts owed to the creditor. A creditor simply passing off a debt collection fee to a consumer that the creditor would incur from the debt collector, without more, cannot possibly constitute an "unfair or unconscionable means to collect or attempt to collect any debt" where the creditor has not sold the debt account to the debt collector and where the contract between the consumer and creditor obliges the consumer to pay for the costs of "reasonable collection expenses." 15 U.S.C. § 1692f; see also Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay . . . collection costs, a debt collector may . . . include that amount. . . . Doing so does not violate the FDCPA.").

Because the court finds that the debt agreement expressly authorized CPS to include the 25% collection fee in Levine's account as a matter of law, the court need not undergo an analysis of whether the collection fee is permitted by law. The court finds that summary judgment is appropriate

16

for CPS on this claim.

## III. CONCLUSION

For the foregoing reasons, Levine's motion for summary judgment is granted in part and denied in part. The motion is granted with respect to Counts I and III. The motion is denied with respect to Count V. CPS's motion for summary judgment is granted in part and denied in part. The motion is granted with respect to Count V. The motion is denied with respect to Counts I and III. The court declines to address Counts II and IV. As the parties have not submitted briefing on the issue of damages, the court refers the case to the magistrate judge for further proceedings or settlement.

Date: 3/7/2019

ENTER:

_____

FREDERICK J. KAPALA

District Judge